UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-60622

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1010 NORTH 30TH ROAD,
HOLLYWOOD, FLORIDA 33021,

326 WILSON STREET, #204,
HOLLYWOOD FLORIDA 33019,

912 NORTH 30TH ROAD,
HOLLYWOOD, FLORIDA 33021,

And

5724 MCKINLEY STREET,
HOLLYWOOD, FLORIDA 33021,

        Defendants *In Rem*.
_____/

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, by and through the undersigned Assistant United States Attorney, files this Verified Complaint for Forfeiture *In Rem*, to allege, upon information and belief, as follows:

### I.     INTRODUCTION AND DEFENDANTS *IN REM*

1.     This is a civil action *in rem* to forfeit the following real properties, including all buildings, fixtures, appurtenances, improvements, attachments and easements found therein or thereon (and hereinafter collectively referred to as the "**Defendant Properties**"):

    a. 1010 North 30th Road, Hollywood, Florida 33021 ("**Defendant Property 1**");

    b. 326 Wilson Street, #204, Hollywood, Florida 33019 ("**Defendant Property 2**");

  c. 912 North 30th Road, Hollywood, Florida 33021 ("**Defendant Property 3**"); and

  d. 5724 Mckinley Street, Hollywood, Florida 33021 ("**Defendant Property 4**").

2. As alleged herein, **Defendant Property 1** is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7), as real property that was used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, narcotics trafficking offenses that occurred in the Southern District of Florida.

3. As alleged herein, **Defendant Property 2, Defendant Property 3,** and **Defendant Property 4** are subject to forfeiture, pursuant to: 21 U.S.C. § 881(a)(6), as property traceable to the proceeds of narcotics trafficking offenses that occurred in the Southern District of Florida; 18 U.S.C. § 981(a)(1)(A), as property involved money laundering offenses that occurred in the Southern District of Florida and elsewhere, and/or as property traceable to such property; and/or 31 U.S.C. § 5317(c)(2), as property involved federal structuring offenses that occurred in the Southern District of Florida and elsewhere, and/or as property traceable to such property.

## II. JURISDICTION AND VENUE

4. The Court has jurisdiction over this subject matter pursuant to 28 U.S.C. §§ 1345 and 1355(a).

5. Pursuant to 28 U.S.C. §§ 1355(b) and 1395, this Court has venue as the acts or omissions giving rise to the forfeiture occurred in this District, and because the **Defendant Properties** are located in this District.

## III. FACTUAL ALLEGATIONS

### A. Federal Criminal Prosecution of Andres Zamora

6. Andres Zamora ("Zamora") is an individual who has previously been convicted in

both state and federal court for narcotics trafficking offenses.

7. In 2001, the Defendant was convicted on state court charges of cocaine trafficking and conspiracy to commit cocaine trafficking. *See* Court Case No.: F-98-018553-C (Circuit Court, 11th Judicial Circuit, Miami-Dade County).

8. Zamora was released from incarceration for that state court conviction in or around March 2005.

9. Subsequently, Zamora was prosecuted and convicted for offenses related to federal narcotics trafficking, unlawful use of firearms, and Social Security benefits fraud, in the federal criminal case, *United States of America v. Andres E. Zamora*, Case No. CR-15-60298-WJZ (Southern District of Florida) (hereinafter referred to as the "Criminal Case").

10. The Criminal Case was initiated by the filing of a 32-count indictment (hereinafter referred to as the "Zamora Indictment"), which a federal grand jury returned on or about November 19, 2015.

11. On or about April 1, 2016, Zamora entered into a plea agreement (hereinafter the "Plea Agreement") with the United States Attorney's Office, in which Zamora agreed to plead guilty to counts 16, 19, 29, and 32 of the Zamora Indictment.

12. On or about April 1, 2016, Zamora stipulated in a factual proffer (hereinafter the "Factual Proffer") that, had the Criminal Case gone to trial, the government would prove certain facts beyond a reasonable doubt.

13. The Factual Proffer is publically available in the Criminal Case. *See* Case No. CR-15-60298-WJZ, ECF No. 37. The Factual Proffer is attached hereto as Exhibit 1 and is incorporated herein by reference.

3

14. In his Factual Proffer, the Defendant acknowledged that after his March 2005 release from prison for his previous state court conviction, he "has had no legitimate employment or source of income. Instead, ZAMORA has generated illegal income by trafficking in narcotics and firearms and by fraudulently receiving Supplemental Security Income (SSl) benefits from the Social Security Administration." Factual Proffer, ¶ 2.

15. On or about June 29, 2016, Zamora was sentenced in connection with his guilty plea as to counts 16, 19, 29, and 32 of the Zamora Indictment.

16. As set forth in greater detail below, Zamora admitted to using **Defendant Property 1** as the location to sell, or attempt to sell, a confidential source (the "CS") and an undercover agent (the "UC") "… 599.8 grams of cocaine, 390.9 grams of heroin, 30 firearms, and a ballistic vest, in exchange for a total of $69,320 in U.S. currency," between May 1, 2014, and November 6, 2015. *See* Factual Proffer, at ¶ 11.

17. Zamora also admitted that on November 6, 2015, he possessed 46 grams of cocaine at **Defendant Property 1**. *Id.* at ¶ 12.

### B. Controlled Purchases of Narcotics and Firearms at Defendant Property 1

18. From April 2014 through January 2015, Special Agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), including the UC referenced above, commenced an undercover investigation into Zamora's narcotics trafficking activities.

19. During the course of the investigation, the CS conducted two controlled purchases of narcotics from Zamora, and then introduced the UC to Zamora in order for the UC to conduct additional controlled purchases of narcotics from Zamora.

20. On or about May 1, 2014, the CS, at the direction of law enforcement, met with

Zamora in front of **Defendant Property 1** and purchased 0.8 grams of cocaine for $60.

21. On or about June 5, 2014, the CS, at the direction of law enforcement, met with Zamora in front of **Defendant Property 1** and purchased 0.9 grams of cocaine for $60.

22. On or about August 15, 2014, the CS and the UC together traveled to **Defendant Property 1** and purchased from Zamora 27.8 grams of cocaine for $1,100.

23. On or about August 21, 2014, the CS and the UC traveled to **Defendant Property 1** and purchased from Zamora 27.7 grams of cocaine for $1,100.

24. On or about September 4, 2014, the CS and the UC traveled to **Defendant Property 1** and purchased from Zamora 53.9 grams of cocaine for $2,100.

25. From on or about September 10, 2014 through November 6, 2015, the UC, without the CS's participation, met with Zamora at **Defendant Property 1** on approximately 13 separate occasions and purchased narcotics from Zamora.

26. On or about September 10, 2014, the UC traveled to **Defendant Property 1**, where he purchased from Zamora 83.3 grams of cocaine for $3,300.

27. On or about September 18, 2014, the UC traveled to **Defendant Property 1**, where he purchased from Zamora 111.5 grams of cocaine for $4,300.

28. On or about October 7, 2014, the UC traveled to **Defendant Property 1**, where he purchased from Zamora 83.7 grams of cocaine for $3,200, as well as a Bersa .380 caliber pistol, loaded with 3 rounds, for $300, and a ballistic vest for $200.

29. On or about October 24, 2014, the UC traveled to **Defendant Property 1**, where he purchased from Zamora 56.3 grams of cocaine for $2,200, as well as a Mossberg 20-gauge, pump-action shotgun for $400.

5

30. On or about November 13, 2014, the UC traveled to **Defendant Property 1**, where he purchased from Zamora 27.4 grams of cocaine for $1,100, as well as an AMT .45 caliber pistol, loaded with 5 rounds, and a Taurus .38 caliber revolver, for $1,000.

31. On or about December 4, 2014, the UC traveled to **Defendant Property 1**, where he purchased from Zamora 27.2 grams of cocaine for $1,100, as well as a Century Arms AK-47 rifle with a high capacity magazine, an Intratec 9mm caliber pistol, a Cobray 9mm pistol, a Smith & Wesson 9mm pistol, a Star 9mm pistol, and a Hi Point 9mm pistol, for $4,900.

32. This December 4, 2014, transaction was the basis of Zamora's conviction on count 29 of the Zamora Indictment in the Criminal Case.

33. On or about January 22, 2015, the UC traveled to **Defendant Property 1**, where he purchased from Zamora 27.8 grams of cocaine for $1,100, as well as a Kimber .45 caliber pistol, a Lorcin .25 caliber pistol, and Rossi .38 caliber revolver, for $1,300.

34. On or about February 26, 2015, the UC traveled to **Defendant Property 1**, where he purchased from Zamora 27.2 grams of cocaine for $1,100, as well as an Intratec 9mm pistol, a Lorcin .25 caliber pistol, and Smith & Wesson .38 caliber revolver, for $2,000.

35. On or about April 9, 2015, the UC traveled to **Defendant Property 1**, where he purchased from Zamora 28.2 grams of heroin for $3,000, as well as a Ruger .380 caliber pistol, with two loaded, 12-round magazines, and an Ekol Firat Magnum pellet gun, for $1,200.

36. On or about May 21, 2015, the UC traveled to **Defendant Property 1**, where he purchased from Zamora 84.2 grams of heroin for $9,000.

37. On or about June 11, 2015, the UC traveled to **Defendant Property 1**, where he purchased from Zamora 139 grams of heroin for $13,000, as well as an Intratec 9mm pistol for

6

$1,400.

38. This June 11, 2015, transaction was the basis of Zamora's conviction on count 16 of the Zamora Indictment in the Criminal Case.

39. On or about September 10, 2015 the UC traveled to **Defendant Property 1**, where he purchased from Zamora 55.9 grams of heroin for $5,200, as well as a Keltec .32 caliber pistol, an Jimenez .380 caliber pistol, a Keltec .380 caliber pistol, and a A.A. Arms 9mm pistol, for $2,800.

40. On or about November 6, 2015, the UC traveled to **Defendant Property 1**, where Zamora attempted to sell the UC 83.6 grams of heroin, a Keltec .32 caliber pistol, an Israeli Weapons Industry .22 caliber pistol, a Taurus .45 caliber pistol, and a Colt Python .357 revolver.

41. During the course of the attempted sale on or about November 6, 2015, Zamora was arrested by ATF.

42. On November 6, 2015, law enforcement conduct a search of **Defendant Property 1** incident to Zamora's arrest.

43. During the course of the November 6, 2015, search of **Defendant Property 1**, law enforcement discovered an additional 46 grams of cocaine.

### C. Deposits of Illicit Funds into Zamora's Bank Account

44. According to information obtained from the Florida Department of Economic Opportunity, Zamora had $0 in reported annual wages each year in 2009, 2010, 2011, 2012, 2013, 2014, and 2015.

45. Additionally, Zamora admitted that he had "no legitimate employment or source of income since his release from prison on March 23, 2005." *See* Factual Proffer, ¶ 16.

46. Instead, Zamora "generated illegal income by trafficking in narcotics and firearms and by fraudulently receiving Supplemental Security Income (SSl) benefits from the Social Security Administration." *Id.* at ¶ 2.

47. Between February 2010 and July 2015, a review of deposit slips shows that Zamora deposited nearly $165,000 in cash into an account at SunTrust Bank ending in X0178 ("Account X0178").

48. The vast majority of such cash deposits were less than $10,000 and appear to have been structured in this manner to avoid federal reporting requirements that mandate domestic financial institutions file a currency transaction report ("CTR") for every transaction involving U.S. currency in excess of $10,000.

49. Zamora, along with his wife (the "Wife"), opened Account X0178 in or around February 2010.

50. In or around December 2010, one of Zamora's daughters ("Daughter 1") was added as a signatory to Account X0178.

51. According to information obtained from the Florida Department of Economic Opportunity, Daughter 1 had reported annual wages of approximately $29,000 in 2009; approximately $32,000 in 2010; approximately $31,000 in 2011; approximately $32,000 in 2012; approximately $33,000 in 2013; approximately $22,000 in 2014; and approximately $37,000 in 2015.

52. Nevertheless, between February 2010 and July 2015, a review of deposit slips shows that Daughter 1 deposited nearly $198,000 in cash into Account X0178.

53. The vast majority of such cash deposits were less than $10,000 and appear to have

been structured in this manner to avoid federal reporting requirements that mandate domestic financial institutions file a currency transaction report ("CTR") for every transaction involving U.S. currency in excess of $10,000.

54. According to information obtained from the Florida Department of Economic Opportunity, the Wife had $0 in reported annual wages each year in 2009, 2010, 2011, 2012, 2013, 2014, and 2015.

55. Nevertheless, between February 2010 and July 2015, a review of deposit slips shows that the Wife deposited over $71,000 in cash into Account X0178.

56. The vast majority of such cash deposits were less than $10,000 and appear to have been structured in this manner to avoid federal reporting requirements that mandate domestic financial institutions file a currency transaction report ("CTR") for every transaction involving U.S. currency in excess of $10,000.

57. From approximately February 2010 through approximately July 2015, over $500,000 *in cash* was deposited into Account X0178 by Zamora, his family members and other unknown individuals.

### D. Use of Illicit Funds to Purchase the Defendant Properties

58. Once narcotics proceeds and cash involved in structuring offenses were deposited into Account X0178, they were commingled with other funds, and then used to purchase **Defendant Property 2, Defendant Property 3, and Defendant Property 4.**

59. At the time of purchase, and through the present day, **Defendant Property 2**, **Defendant Property 3**, and **Defendant Property 4** were titled in the name of Zamora's family members, and/or titled under various aliases, in an effort to conceal or disguise the nature, location,

9

source, ownership, or control of the proceeds of the narcotics trafficking and structuring offenses described above.

60. On or about May 12, 2014, approximately $135,000 was transferred from Account X0178 to an account ending X9707 at SunTrust Bank ("Account X9707"), held in the name of Zamora.

61. On or about July 30, 2014, approximately $133,817.22 was withdrawn by wire transfer from Account X9707 and used for the purchase of **Defendant Property 2.**

62. According to public records, the title owners of **Defendant Property 2** are Zamora's sister (the "Sister") and her son, *i.e.*, Zamora's nephew (the "Nephew").

63. On or about January 29, 2015, approximately $112,038.10 was withdrawn by wire transfer from Account X0178 and used for the purchase of **Defendant Property 3.**

64. According to the Warranty Deed, recorded in Broward County on or about February 6, 2015, **Defendant Property 3** was conveyed to "Andres Zamora and … [the Sister], husband and wife whose post office address is 1010 North 30th Road, Hollywood, FL 33021," which is **Defendant Property 1**.

65. On or about April 23, 2015, a check for $5,000 was issued from Account X0178 and used for the purchase of **Defendant Property 4.**

66. On or about May 25, 2015, $72,853.89 was withdrawn by wire transfer from Account X0178 and used for the purchase of **Defendant Property 4.**

67. According to public records, the title owners of **Defendant Property 4** are the Sister and one of Zamora's daughters ("Daughter 2").

## IV.     BASIS FOR FORFEITURE

68. Pursuant to 21 U.S.C. § 881(a)(6), "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance ... in violation of [narcotics trafficking offenses, including 21 U.S.C. §§ 841(a)(l) and 846], [and] all proceeds traceable to such an exchange" is subject to forfeiture.

69. Pursuant to 21 U.S.C. § 881(a)(7), "[a]ll real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of …" narcotics trafficking offenses, including 21 U.S.C. §§ 841(a)(l) and 846, are subject to forfeiture.

70. Pursuant to 31 U.S.C. § 5317(c)(2), "[a]ny property involved in a violation of [structuring offenses, including 31 U.S.C. § 5324], or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy" is subject to forfeiture.

71. Pursuant to 18 U.S.C. § 981(a)(l)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [money laundering offenses in 18 U.S.C. §§ 1956 or 1957], or any property traceable to such property" is subject to forfeiture.

### FIRST CLAIM
(21 U.S.C. § 881(a)(7))

72. The factual allegations in paragraphs 6 through 70 are re-alleged and incorporated by reference herein.

73. **Defendant Property 1** is subject to forfeiture to the United States, pursuant to 21 U.S.C. § 881(a)(7), as real property that was used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, narcotics trafficking offenses, in violation of 21 U.S.C.

§§ 841(a)(1) and 846.

## SECOND CLAIM
(21 U.S.C. § 881(a)(6))

74. The factual allegations in paragraphs 6 through 70 are re-alleged and incorporated by reference herein.

75. **Defendant Property 2, Defendant Property 3,** and/or **Defendant Property 4** are subject to forfeiture to the United States, pursuant to 21 U.S.C. § 881(a)(6), as proceeds traceable to an exchange of moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person for a controlled substance in violation of narcotics trafficking offenses set forth in 21 U.S.C. §§ 841(a)(l) and 846.

## THIRD CLAIM
(18 U.S.C. § 981(a)(1)(A))

76. The factual allegations in paragraphs 6 through 70 are re-alleged and incorporated by reference herein.

77. **Defendant Property 2, Defendant Property 3,** and/or **Defendant Property 4** are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(l)(A), as property, real or personal, involved in a transaction or attempted transaction in violation of money laundering offenses set forth in 18 U.S.C. §§ 1956 and/or 1957, and/or property traceable to such property.

## FOURTH CLAIM
(31 U.S.C. § 5317(c))

78. The factual allegations in paragraphs 6 through 70 are re-alleged and incorporated by reference herein.

79. **Defendant Property 2, Defendant Property 3,** and/or **Defendant Property 4** are subject to forfeiture to the United States, pursuant to 31 U.S.C. § 5317(c), as property involved in

a violation of federal structuring offenses set forth in 31 U.S.C. § 5324, and/or a conspiracy to commit such violation, and/or as property traceable to such violation.

*WHEREFORE,* Plaintiff, the United States of America, requests that any and all persons having any claim to the **Defendant Properties** be directed to file and serve their verified claims and answers as required by Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, or suffer default thereof, and further requests that this Honorable Court declare the **Defendant Properties** condemned and forfeited to the United States of America, and for such other and further relief as this Court may deem just, necessary, and proper.

Dated: March 24, 2020

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:      */s/ Peter A. Laserna*
Peter A. Laserna
Assistant United States Attorney
Court ID No. A5502555
peter.laserna@usdoj.gov
U.S. Attorney's Office
99 N.E. 4th Street, 7th Floor
Miami, Florida 33132-2111
Telephone: (305) 961-9030
Facsimile: (305) 536-4089

## **VERIFICATION**

I, IGNACIO J. ESTEBAN, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, verify under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and other information known to me and/or furnished to me by other law enforcement agents and that everything represented herein is true and correct to the best of my knowledge and belief.

Executed on March  19th  2020.

*Ignacio J. Esteban*
IGNACIO J. ESTEBAN
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives