UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 20-60622-Civ-RUIZ

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1010 N. 30TH RD., HOLLYWOOD, FL 33021;
326 WILSON ST., #204, HOLLYWOOD FL 33019;
912 N. 30TH RD., HOLLYWOOD, FL 33021; and
5724 MCKINLEY ST., HOLLYWOOD, FL 33021,

      Defendants In Rem.
_____/

## MOTION TO DISMISS COMPLAINT

Pursuant to Fed. R. Civ. P. 12(b) and Rule G(5)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Claimants Emilio Garcia, Andres Zamora, Isleidys Zamora, and Iliana Zamora (the Claimants), through undersigned counsel, respectfully move to dismiss the complaint, and in support of the motion state as follows:

    **1.**    **FAILURE TO STATE A CLAIM.**

The requirement of Supplemental Admiralty Rule G(2)(f) that a forfeiture complaint plead sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial, is more stringent than the general pleading requirements set forth in the Federal Rules of Civil Procedure. *United States v. Dacca Rett*, 6 F.3d 37, 47 (2d Cir. 1993). Even under Fed. R. Civ. P. 8, to survive a motion to dismiss, a complaint must set forth a sufficient

factual, rather than conclusory, showing of liability for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (citation omitted).

In *Twombly*, the Supreme Court abrogated prior decisions ruling that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. 550 U.S. at 561; *see also id*. at 560 (explaining the need for something more than merely parallel behavior in the factual allegations); *Financial Security Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282–83 (11th Cir. 2007) (citing *Twombly*). Therefore, a complaint that consists of legal conclusions masquerading as facts should be dismissed. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). As the Supreme Court explained, such conclusory allegations do not unlock the doors of discovery. *Iqbal*, 556 U.S. at 678; *see Weissman v. National Association of Security Dealers, Inc.*, 500 F.3d 1293, 1303 (11th Cir. 2007) (holding that *Twombly* rejected the notion that a conclusory statement of claim can survive a motion to dismiss whenever the pleadings leave open the possibility that the plaintiff might later establish undisclosed facts to support recovery).

Each of the causes of action (Claims 1–4) in the Complaint is deficient under the governing pleading standard. The Complaint conclusorily alleges four theories of liability. As to 326 Wilson St., 912 N. 30th Rd., and 5724 McKinley St. (referred to as properties 2–4 in the Complaint), the Complaint asserts that the defendant properties: involved money laundering offenses (Complaint ¶ 3, citing

18 U.S.C. § 981(a)(1)(A)); involved federal structuring offenses (*id.*, citing 31 U.S.C. § 5317(c)(2)); and were traceable to the proceeds of narcotics trafficking offenses (*id.*, citing 21 U.S.C. § 881(a)(6)). As to 1010 N. 30th Rd. (property 1 in the Complaint), the claim asserted is that the property was used or intended to be used ... to commit narcotics trafficking offenses (Complaint ¶ 2, citing 21 U.S.C. § 881(a)(7)).

  A. <u>Money laundering claim</u>.  The Complaint fails to identify any money laundering violation, whether by statutory citation, title, or even a colloquial identifier.  Notably, the Complaint fails to identify whether there is an allegation of money laundering under 18 U.S.C. §§ 1956 or 1957 or whether some other form of laundering violation, beyond the parameters of the primary statutes, is intended.  The Complaint's failure to identify a money laundering crime renders the claim fatally deficient and impossible to defend against.  And the absence of any specification of such an offense is compounded by the absence of any factual allegations that would bring the properties within the scope of the money laundering statutes.

  The conclusory allegations in the Complaint fail assert any of the elemental facts necessary to claim a money laundering violation, including the crucial mens rea elements.  To the extent the government relies merely on a proceeds forfeiture theory and conflates that with a money laundering theory, such a mistake is fundamental error.  The proceeds theory allegations are addressed more fully below.  But even assuming a proceeds allegation of sufficient factual clarity, the government has alleged nothing to show the involvement of any of the properties in this case to a violation of *money laundering* statutes.  Nor does the Complaint explain how or when the properties "involved money laundering offenses." The

government simply has not alleged—even conclusorily—that the purchasers of the properties committed any money laundering violations, and thus the claim fails under the *Twombly-Iqbal* standard and Rule G(2)(f)'s *detailed-facts* pleading requirement.

B.  Structuring claim.  The Complaint fails to set forth facts showing a structuring violation.  Instead, the Complaint alleges, conclusorily, that a majority of cash deposits made by three persons were less than $10,000 and appear to have been structured in this manner to avoid federal reporting requirements.  Complaint ¶¶ 48, 53, and 56.  This speculative allegation is facially insufficient and entirely conclusory, where the Complaint sets forth neither the transactions at issue nor the basis for a conclusory opinion on how or why the transactions might appear to relate to transactional intent.

The first key defect in the structuring claim is that the sole factual allegation is that a *majority* of cash deposits involved amounts less than $10,000.  This allegation necessarily implies that an untold minority (49 percent?) of the transactions were of an amount greater than $10,000 and that those transactions could not have been part of below-$10,000 structuring effort.  A conclusory allegation that 51 percent or more of an unstated number cash deposits were below $10,000 is not an allegation of a crime.

Second, and more importantly, the Complaint proceeds in contravention of the relevant definition of a structuring offense.  In *United States v. Lang*, 732 F.3d 1246, 1247–48 (11th Cir. 2013), the Eleventh Circuit held that the unit of prosecution under 31 U.S.C. § 3524(a)(3) is the financial transaction actually structured, not a list of smaller transactions that, if added up, would amount to more than $10,000.  In reaching this conclusion, the Eleventh Circuit recognized

that one cannot be properly charged—let alone properly convicted—of having structured a financial transaction to avoid a Currency Transaction Report (CTR) if the financial transaction alleged to have been structured would not have triggered a CTR in the first place. Section 5324(a)(3) of Title 31 prohibits a person from structur[ing] or assist[ing] in structuring, or attempt[ing] to structure or assist in structuring, *a transaction* (not transactions) with one or more domestic financial institutions for the purpose of evading 31 U.S.C. 5313(a)'s requirement that a financial institution report to the government cash transactions exceeding a particular amount. *Lang*, 732 F.3d at 1247-48 (emphasis added, quotations omitted). As the court of appeals recognized in *Lang*: In order to be 'for the purpose of evading' the reporting requirements, *the structured transaction* must involve *an amount that is more than $10,000*; otherwise, evasion would not be necessary or possible because there would be no reporting requirement anyway. *Lang*, 732 F.3d at 1248 (emphasis added); *see id.* at 1247 (holding that an indictment that does not allege a structured transaction involving more than $10,000 and instead relates multiple transactions without alleging their unifying link to a CTR-violative amount does not provide the necessary factual allegations).

The Complaint proceeds merely to add conclusorily that a series of smaller cash deposits appear to have been conducted for the purpose of evading CTR reporting. Not only is the conclusory term "appear" wholly insufficient, the absence of any identification of a pool of money from which funds could have been divided up into smaller deposits renders the conclusory allegation fanciful, in complete derogation of the instruction of the Eleventh Circuit in *Lang*. All one can say about a series of smaller deposits is that they might or might not have come from a larger pool. But the Complaint makes this claim without even setting forth

a single deposit date or amount, much less a cluster of them, to even begin to speculate about a structured transaction. By proceeding in a factually deficient, entirely conclusory, and *Lang*-violative manner, the Complaint fails in its claim of structuring.

  C. <u>Proceeds claim</u>. The government relies on a factual basis statement attached to a plea agreement for Andres Zamora to claim that properties 2–4 were acquired through drug proceeds. But the factual basis statement incorporated into the allegations of the Complaint fails to assert, even conclusorily, that any narcotics trafficking proceeds went toward the acquisition of the properties.[1] In fact, the Complaint blurs the amount of any such proceeds by mixing up sales of expensive firearms with sales of minor amounts of drugs (which, in the period from May 2014 to May 2015, purport to add up to just $19,720, hardly enough to purchase three pieces of real estate). It is unclear from the Complaint what amount of drug proceeds is at issue at all. Rather, the Complaint alleges *two* non-drug sources of income for Claimant Andres Zamora, again leaving the reader to guess at how much proceeds produced from each of the three sources might or might not have yielded even any net depositable proceeds. *See* Complaint ¶ 14. This three-card-Monte form of pleading—asking the reader to speculate that the third card (the drug card) produced substantial proceeds that went into purchase of properties—is conclusory and speculative, and fails the test of 21 U.S.C. § 881(a)(6) in any event. Apart from the failure to identify a sufficient amount of

---

[1] The government adds one more factual allegation: that the Florida Department of Economic Opportunity does not have records of income for Andres Zamora and two others. *See* Complaint ¶ 54. However, the government does not allege that the cited state department keeps comprehensive records of income for *any* Florida resident or citizen; and publicly available information about the department does not indicate any such comprehensive income tracking.

drug proceeds at issue, the Complaint fails also to allege that drug proceeds were in fact used, instead hinting that funds deposited by various persons were drug proceeds.  These vague, conclusory allegations, coming six years after the government engaged in undercover transactions with Andres Zamora, set forth only a possibility, without effective tracing as required under § 881(6).

D. <u>Place of sale claim</u>.   As to property 1, the Complaint alleges the property was used to commit a drug trafficking offense because hand-to-hand transactions allegedly occurred within the property lines.  But that mere-location form of allegation is insufficient to forfeit real estate, particularly where the alleged trafficker is not an owner of the property and there is no allegation that the property owners were aware of, much less affirmatively took steps to facilitate, the drug transactions.  Absent such allegations, the mere place-of-occurrence theory on which the Complaint rests is insufficient.  Unlike proceeds tracing cases, where the burden of bringing forth an innocent-owner defense is placed on the Claimant, there is no such shifting of the burden as to a property owner, where the property is sought to be forfeited not on a tracing theory, but rather on the allegation that a wrongdoer used the property of another to conduct a transaction.  Otherwise, the owner of an office building could find her property forfeited based on the actions of others where the government has failed to even allege she knew anything about such improprieties.

2. **VIOLATION OF THE STATUTE OF LIMITATIONS.**

The government failed to act (failed to file its Complaint and obtain jurisdiction over the in rem defendants) within five years of the underlying criminal events.  The government's investigation began and criminal evidence was claimed by the government as of May 2014, six years before even the filing of the

7

Complaint. As to each of the properties on which Complaint purports to assert a basis for forfeiture and as to each of the four claims (or causes of action), the Complaint is time barred under the statute of limitations for civil forfeiture actions, *see* 19 U.S.C. § 1621 (five or two years), and the criminal statute of limitations, 18 U.S.C. § 3282 (five years). *See Toussie v. United States*, 397 U.S. 112, 115 (1970) (criminal limitations statutes are to be liberally interpreted in favor of repose). As the Supreme Court recently held, in the civil context, statutes of repose provide certainty of repose in a manner akin to criminal statutes of limitation. *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 137 S.Ct. 2042, 2049 (2017) ("statutes of repose are enacted to give more explicit and certain protection to defendants").

First, the Complaint acknowledges that properties 2 and 3 were acquired by the Claimants more than five years before the filing of the Complaint. *See* Complaint ¶¶ 61, 63 (61. On or about July 30, 2014, approximately $133,817.22 was withdrawn by wire transfer from Account X9707 and used for the purchase of Defendant Property 2. ... 63. On or about January 29, 2015, approximately $112,038.10 was withdrawn by wire transfer from Account X0178 and used for the purchase of Defendant Property 3.).

Second, although the Complaint alleges a contribution of funds toward the purchase of property 4 on May 25, 2015, the issue for purposes of the forfeiture statute is the government's knowledge of the actual proceeds, and it is clear that the Complaint alleges that the proceeds purported to be at issue as to property 4 were proceeds that the government knew of since May 2014. *See United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 503 (6th Cir. 1998) ("The Government cannot disregard its discovery of earlier occurring offenses in preference for later offenses which would produce a more favorable timeline.").

8

Courts apply a known or should-have-known standard to Section 1621, meaning that "an offense is discovered when the [g]overnment discovers or possesses the means to discover the alleged wrong, whichever occurs first." *$515,060.42*, 152 F.3d at 502; *see also United States v. James Daniel Good Prop. Titled in Name of James Daniel Good*, 971 F.2d 1376, 1381 (9th Cir. 1992).

Third, the government's allegations of continued use of undercover transactions even after March 2015 do not serve as a viable basis for forfeiture of the properties beyond the expiration of the statute of limitations. There is no precedent for extending the statute of limitations in that manner, where the statute affords protection of repose based on a combination of occurrence and discovery factors. The government had both discovered and verified the occurrence of the critical underlying events prior to April 2015, and at a minimum cannot rely on prior events as a basis for forfeiture or disclaim knowledge of its own investigation. The Complaint concedes that the government was aware of the relevant criminal activity and could have filed charges and sought relevant proceeds as early as May 2014 to March 2015, at a time outside the limitations period. The Complaint is time barred in whole or principal part.

3. **VIOLATION OF PLEA AGREEMENT TERMS AS TO FORFEITURE ON WHICH CLAIMANT ANDRES ZAMORA RELIED IN ENTERING INTO A PLEA AGREEMENT AND FACTUAL BASIS.**

The plea agreement terms that were presented and explained to Andres Zamora, in order to obtain his accession to resolution of the criminal prosecution referred to in paragraph 9 of the Complaint, include assurances given to him that the government would not pursue forfeiture of property 1. Property 1 was identified for forfeiture in the criminal indictment, but was specifically removed

from the plea agreement to reflect the parties' understanding that it would not be forfeited. Because he relied on those representations, as related to him by his attorney in explanation of the express terms of the plea agreement, permitting the government to pursue forfeiture at this time, years after the fact, would violate the criminal defendant's fundamental due process rights, and the government is estopped to proceed with forfeiture based on the understanding reached with the Claimant and criminal defense counsel.

4. **THE DOCTRINE OF LACHES BARS THE FILING OF THE COMPLAINT.**

To the extent that any part of the civil forfeiture claims in this case is found to have been asserted just within the statutory limitations period, the doctrine of laches bars the Complaint. In the intervening period in which the government waited to pursue forfeiture relief, the central figure and Claimant Andres Zamora has been incarcerated, has developed cancer requiring surgery from which he is still receiving treatment at the Federal Medical Center at Butner, North Carolina, and has been quarantined from in-person contact with any legal adviser or other person apart from BOP personnel and inmates since mid-March 2020. It is unclear when the Claimant will be recovered from his surgery or if he will be able to survive the high rate of COVID-19 infection at the Butner complex. Similarly, it is unknown when he would be able to return to this District.

The government has been utilizing the Claimant and persons acting in his behalf to pursue a corruption and related crimes investigation at FCI Miami. His cooperation has led to the prosecution and conviction of offenders in federal court and they are awaiting sentencing. Consistent with his ongoing cooperation, he dismissed his 28 U.S.C. § 2255 motion which was pending until last year.

Throughout all of this time, and his coordination with the government in matters of risk to himself and his family, as well as debriefings, the government gave no indication of any anticipated action for which Claimant should need to prepare as to forfeiture issues going back at least six years. Bank and other records have been lost in the interim. Funds needed to mount a defense to the forfeiture have been expended, including on representation to assist in the cooperation requested by the government.

The ability to fully defend against and to parse out relevant claims and to effectively invoke the statute of limitations and other defenses has been unduly prejudiced by the delay for which the government offered no explanation. At least since the time of entry of the guilty plea in the criminal case, the government has been aware that the Claimant is bipolar and has suffered from other severe conditions affecting his functioning.

Under these circumstances, and as a result of the loss of paperwork and relevant exhibits and witnesses as to all Claimants due to the inexplicable delay by the government, the doctrine of laches compels dismissal, and Claimants request an evidentiary hearing to fully disclose the extent of the prejudice, including matters arising from the need to fulfill requested cooperation on behalf of the government. *See Smith v. Caterpillar, Inc.*, 338 F.3d 730, 734 (7th Cir. 2003) (laches relief warranted where delay affects the substantial rights of the defendant to such a degree that it justifies the equitable relief of barring the plaintiff's claims).

### 5. DUE PROCESS VIOLATION.

Filing of the Complaint violates the Due Process Clause because it follows an agreement reached by the government and the Claimant Andres Zamora regarding withdrawal of his 28 U.S.C. § 2255 motion, violates implicit agreements

as to cooperation by the Zamora family in the prosecution of corruption in the Department of Justice, and represents retaliation for the assertion of constitutional rights. The government manifested its insistence that Andres Zamora dismiss his § 2255 motion, which had been set for an evidentiary hearing until the § 2255 motion was withdrawn by agreement with the government just two months before the filing of the Complaint in this case.

Claimants' standing as record owners in a civil forfeiture proceeding is unquestionable. Hence, the government should respond to the motion dismiss in the ordinary course, within 21 days.

Counsel for the Plaintiff, Assistant United States Attorney Peter Laserna, has authorized the undersigned to represent that the Plaintiff opposes this motion.

WHEREFORE, Claimants Emilio Garcia, Andres Zamora, Isleidys Zamora, and Iliana Zamora request that the Court dismiss the Complaint in this case.

                        Respectfully submitted,

By:   /s Richard C. Klugh
       Richard C. Klugh, P.A.
       40 N.W. Third Street, PH1
       Miami, Florida 33128
       Fla. Bar No. 305294
       Tel. 305-536-1191
       rklugh@klughlaw.com
       Attorney for Claimants