UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-60622-RUIZ/STRAUSS

**UNITED STATES OF AMERICA,**

    Plaintiff,
v.

**1010 NORTH 30TH ROAD,
HOLLYWOOD, FLORIDA 33021,** *et al.***,**

    Defendants.
    _____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon the Motion to Dismiss Complaint ("Motion") [DE 12].  The Motion was referred to me [DE 39] in accordance with 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules for the Southern District of Florida.  I have reviewed the Motion and all pertinent portions of the record.  For the reasons discussed herein, I **recommend** that the Motion be **GRANTED IN PART and DENIED IN PART**, with Count IV being dismissed, without prejudice and with leave to amend, and with the Motion otherwise being denied.

## BACKGROUND AND ALLEGATIONS

The Government filed its four-count Verified Complaint for Forfeiture *In Rem* ("Complaint") [DE 1] on March 24, 2020 against four real property defendants (collectively "Defendant Properties").[1]  On May 7, 2020, Claimants, Andres Zamora ("Zamora"), Isleidys

---

[1] The first property ("Defendant Property 1") is located at 1010 North 30th Road, Hollywood, Florida 33021.  The second property ("Defendant Property 2") is located at 326 Wilson Street, #204, Hollywood, Florida 33019.  The third property ("Defendant Property 3") is located at 912 North 30th Road, Hollywood, Florida 33021.  The fourth property ("Defendant Property 4") is located at 5724 Mckinley Street, Hollywood, Florida 33021.

Zamora, Iliana Zamora, and Emilio Garcia filed their Verified Claims and Statement of Interest [DE 7], asserting that they are the owners of the Defendant Properties.

In Count I of the Complaint, the Government alleges that Defendant Property 1 is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(7), as real property that was used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, narcotics trafficking offenses. In Counts II through IV, the Government alleges that Defendant Properties 2-4 are subject to forfeiture. Count II seeks forfeiture pursuant to 21 U.S.C. § 881(a)(6), alleging the properties are traceable to the proceeds of narcotics trafficking offenses. Count III seeks forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), alleging the properties were involved in money laundering offenses and/or are properties traceable to property involved in such offenses. Count IV seeks forfeiture pursuant to 31 U.S.C. § 5317(c), alleging the properties were involved in violations of federal structuring offenses, and/or as part of a related conspiracy, and/or as property traceable to such violations.

This forfeiture action follows the 2015 arrest and criminal case of Zamora in this district (Case No. 15-cr-60298). *See* Complaint ¶¶ 9, 41. In 2001, Zamora was convicted of drug trafficking and conspiracy charges in state court. *Id.* ¶ 7. He was released in 2005 after serving time for that conviction. *Id.* ¶ 8. In April 2016, in his 2015 criminal case, Zamora entered into a plea agreement with the Government and stipulated in a factual proffer (attached to the Complaint) that the Government would have proven certain facts beyond a reasonable doubt had the case gone to trial. *Id.* ¶¶ 11-12.

Prior to Zamora's 2015 arrest, special agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") investigated Zamora for drug trafficking activities. *Id.* ¶ 18. In conjunction with ATF's investigation, a confidential source ("CS") and an undercover agent

2

("UC") made multiple controlled narcotics purchases from Zamora at or in front of Defendant Property 1. *See id.* ¶¶ 16-40. In his factual proffer, "Zamora admitted to using Defendant Property 1 as the location to sell, or attempt to sell [the CS and UC] '599.8 grams of cocaine, 390.9 grams of heroin, 30 firearms, and a ballistic vest, in exchange for a total of $69,320 in U.S. currency,' between May 1, 2014, and November 6, 2015." *Id.* ¶ 16. He also admitted that he possessed 46 grams of cocaine at Defendant Property 1 on the date of his arrest. *Id.* ¶ 17.

The Government further alleges that illicit funds were deposited into Zamora's bank account and used to purchase Defendant Properties 2-4. *See id.* ¶¶ 44-67. Between February 2010 and July 2015, Zamora deposited nearly $165,000 in cash in a bank account ending in 0178 ("0178 Account") that Zamora and his wife opened around February 2010. *Id.* ¶¶ 46, 49. His wife deposited over $71,000 in cash into the account during the same period of time. *Id.* ¶ 55. Additionally, one of Zamora's daughters ("Daughter 1"), who was added as a signatory to the 0178 Account in late 2010, deposited nearly $198,000 in cash into the account during the same period of time. *Id.* ¶¶ 50-52. Overall, more than $500,000 in cash was deposited into the 0178 Account between February 2010 and July 2015. *Id.* ¶ 57.

The vast majority of the deposits by Zamora, his wife, and Daughter 1 were under $10,000 and allegedly "appear to have been structured in this manner to avoid federal reporting requirements that mandate domestic financial institutions file a currency transaction report ("CTR") for every transaction involving U.S. currency in excess of $10,000." *Id.* ¶¶ 47, 53, 56. Although Zamora made these deposits, he admitted to having no legitimate employment or source of income since his release from prison in 2005, and Florida Department of Economic Opportunity ("DEO") records indicate that Zamora and his wife reported $0 in wages in 2009-2015. *Id.* ¶¶ 14,

44-46, 54.  As to Daughter 1, DEO records indicate that she reported annual wages of $22,000 to $37,000 between 2009 and 2015.  *Id.* ¶ 51.

Upon being deposited into the 0178 Account, the cash deposits were allegedly commingled with other funds and then used to purchase Defendant Properties 2-4.  *Id.* ¶ 58.  The Government alleges that the three properties were titled in the names of Zamora's family members (and/or under aliases) "in an effort to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the narcotics trafficking and structuring offenses."  *Id.* ¶ 59.

With respect to the funds used to purchase each of the three properties, Defendant Property 2 was purchased around July 2014 with over $133,000 withdrawn from a bank account ending in 9707 ("9707 Account").  *Id.* ¶ 61.  Roughly 2.5 months earlier, $135,000 had been transferred from the 0178 Account to the 9707 Account.  *Id.* ¶ 60.  Defendant Property 2 is titled in the names of Zamora's sister and nephew.  *Id.* ¶ 62.

Defendant Property 3 was purchased around January 2015 with over $112,000 from the 0178 Account.  *Id.* ¶ 63.  It is titled in the names of Zamora and his sister.  *Id.* ¶ 64.  Finally, Defendant Property 4 was purchased around May 2015 with over $77,000 from the 0178 Account.  *Id.* ¶¶ 65-66.  It is titled in the names of Zamora's sister and one of Zamora's daughters.  *Id.* ¶ 67.

## **LEGAL STANDARD**

This asset forfeiture action is governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules").  Supp. R. G(1).  Supplemental Rules C and E and the Federal Rules of Civil Procedure also apply to the extent that Supplemental Rule G does not address an issue.  Supp. R. G(1).  *See also* Supp. R. A(2).

Under Supplemental Rule G(2)(f), a complaint is required to "state *sufficiently detailed facts* to support a *reasonable belief* that the government will be able to meet its burden of proof at

trial" (emphasis added). The Government will have a preponderance-of-the-evidence burden at trial, which it may typically meet by relying on the totality of the circumstances. *United States v. Approximately $126,880 in United States Currency*, No. 219CV728FTM60MRM, 2020 WL 3270601, at *3 (M.D. Fla. June 17, 2020); *United States v. Real Prop. 10338 Marcy Rd. Nw., Canal Winchester, Ohio*, 938 F.3d 802, 808-12 (6th Cir. 2019).

The pleading requirements under Supplemental Rule G(2) are intended to carry forward the Supplemental Rule E(2)(a) concept that a complaint must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." *United States v. Aguilar*, 782 F.3d 1101, 1108 (9th Cir. 2015). *See also* Supp. R. G(2) advisory committee notes. However, "the complaint may not be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." Supp. R. G(8)(b)(ii).[2] After all, "the government is not required to prove its case simply to get in the courthouse door." *Aguilar*, 782 F.3d at 1109 (quoting *United States v. Real Prop. Located at 5208 Los Franciscos Way*, 385 F.3d 1187, 1193 (9th Cir. 2004)). *See also United States v. $144,210.77 in Funds Seized from Suntrust Bank Account XXX-XX-XXXX*, 63 F. Supp. 3d 1387, 1389 (N.D. Ga. 2014) ("The Government is not required to prove its case at the pleading stage; it is merely required to establish the reasonable belief that the government can meet its burden at trial." (citation omitted)).

---

[2] *See also* Supp. R. G(8) advisory committee notes ("Paragraph (b)(ii) mirrors 18 U.S.C. § 983(a)(3)(D). It applies only to an action independently governed by § 983(a)(3)(D), implying nothing as to actions outside § 983(a)(3)(D). The adequacy of the complaint is measured against the pleading requirements of subdivision (2), not against the quality of the evidence available to the government when the complaint was filed.").

If appropriate, a claimant may seek dismissal of a complaint under Rule 12(b) of the Federal Rules of Civil Procedure. Supp. R. G(8)(b)(i). When a party seeks dismissal under Rule 12(b)(6), courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1229 (11th Cir. 2019); *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). "To survive a motion to dismiss, however, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1210 (11th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## **ANALYSIS**

In the Motion, Claimants seek dismissal upon various grounds. First, they argue that all counts of the Complaint are subject to dismissal under Rule 12(b)(6) because each count fails to state a claim upon which relief can be granted. Second, they argue that the Government's claims are barred by virtue of the applicable statute of limitations. Finally, they raise various laches, estoppel, and due process arguments.

### A. COUNT I

Claimants have not shown that Count I of the Complaint fails to state a claim. Count I seeks forfeiture of Defendant Property 1 pursuant to 21 U.S.C. § 881(a)(7), which provides that the following property is subject to forfeiture:

> All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to

6

>commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment.

There is no dispute that the Complaint alleges narcotics trafficking offenses that come within the scope of § 881(a)(7).  In fact, the Complaint contains detailed factual allegations regarding substantial drug trafficking activities that occurred at Defendant Property 1 and also attaches a copy of Zamora's 2016 factual proffer that further substantiates the drug activities.

Instead, Claimants seek dismissal of Count I on the basis that the Government failed to allege that the owners of Defendant Property 1 were aware of or took steps to facilitate the drug transactions [DE 12 at p. 7].[3]  However, Claimants do not identify a single case or any other legal authority to support their argument that the Complaint must contain such allegations.  Therefore, they have failed to meet their burden of showing that Count I should be dismissed for failing to so allege.  *See Fruitstone v. Spartan Race Inc.*, No. 1:20-CV-20836, 2020 WL 2781614, at *5 (S.D. Fla. May 29, 2020) ("On a Rule 12(b)(6) motion to dismiss, [t]he moving party bears the burden to show that the complaint should be dismissed.  The movant must support its arguments for dismissal with citations to legal authority.  Where a defendant seeking dismissal of a complaint under Rule 12(b)(6) does not provide legal authority in support of its arguments, it has failed to satisfy its burden of establishing its entitlement to dismissal." (internal citations and quotation marks omitted)); *United States v. Toll*, No. 16-CV-62214, 2016 WL 7048321, at *2 (S.D. Fla. Dec. 5, 2016) (same).  *See also* S.D. Fla. L.R. 7.1(a)(1).

---

[3] The Government interprets Claimants' argument on page 7 of the Motion to be "that Defendant Property 1 may not be subject to forfeiture because the United States has failed to allege the exact location on Defendant Property 1's premises that Claimant Zamora committed each of his 18 narcotics sales" [DE 35 at p. 13].  However, I do not interpret the Motion to be making this argument.  To the extent it is, it does so in a vague and conclusory fashion that is insufficient to adequately raise or preserve the issue.  Moreover, the Government convincingly explains in its Response why such an argument fails.

### B. COUNT II

Claimants have failed to show that Count II should be dismissed. Count II seeks forfeiture of Defendant Properties 2-4 pursuant to 21 U.S.C. § 881(a)(6), which provides that the following property is subject to forfeiture:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

In the Motion, Claimants take issue with the level of detail used in the Government's factual allegations related to Count II and argue that the claim alleged is premised upon vague and conclusory allegations [*see* DE 12 at pp. 6-7]. They contend that it is unclear from the Complaint whether drug proceeds were used to purchase Defendant Properties 2-4, and they imply it is more plausible, based on the allegations of the Complaint, that the majority (if not all) of the funds used to purchase the properties came from other sources outside the scope of § 881(a)(6) – even if from proceeds of other illegal activity. For instance, Claimants appear to argue that the majority of the funds that changed hands in Zamora's transactions with ATF, as alleged in the Complaint, pertained to the sale of firearms, with only $19,720 pertaining to drugs.[4] Claimants also imply that the Government was required to include allegations in the Complaint effectively tracing the applicable proceeds to drug trafficking.

As an initial matter, the portion of the Motion relating to Count II [DE 12 at pp. 6-7] once again fails to cite any case law to support the contentions made therein.[5] Therefore, the Motion

---

[4] It appears that Claimants are mistaken in their calculations and that the majority of the ATF funds were used to purchase drugs, not guns.

[5] Claimants do cite a case in their Reply – *United States v. Heath*, 970 F.2d 1397, 1403 (5th Cir. 1992) – to argue that the Government must prove "the aggregate taken from the account exceeded

should automatically be denied as to Count II, except to the extent that Claimants are arguing that the Government failed to include "sufficiently detailed facts" in regard to Count II, as is required under Supplemental Rule G(2)(f).

Nevertheless, even if Claimants are making such an argument, the Motion still fails as to Count II because the Government has alleged "sufficiently detailed facts" from which one could reasonably and plausibly infer that drug trafficking proceeds were used to purchase Properties 2-4, even if only in part. The Government specifically alleges that the funds used to purchase these properties originated from the 0178 Account, and it alleges specific details regarding the dates and amounts of transfers out of the 0178 Account in connection with the purchase of each property. Additionally, the allegations of the Complaint plausibly show that the substantial majority of the funds deposited into the 0178 Account came from illegitimate activities, or at least from certain individuals with no legitimate income, with significant funds coming from drug trafficking activities. Ultimately, the facts alleged are "*sufficiently* detailed facts" that allow Claimants "to commence an investigation of the facts and to frame a responsive pleading," and Claimants do not explain, or point to any case law explaining, what sort of "effective tracing" it is that they contend is required within the Complaint itself. Therefore, the Motion should be denied as to Count II.

## C. COUNT III

Claimants have not shown that Count III fails to state a claim. Count III seeks forfeiture of Defendant Properties 2-4 pursuant to 18 U.S.C. § 981(a)(1)(A), which provides that the

---

the amount of clean funds available" [DE 36 at p. 6]. However, their reliance on *Heath* is misplaced. *Heath* involved an appeal of criminal convictions after trial, not an examination of whether the pleading standard in a civil forfeiture action was satisfied. *See* 970 F.2d at 1403-04. Moreover, because it was a criminal case, the "beyond a reasonable doubt" burden of proof in *Heath*, *id.*, which Claimants omit from the quotation in their Reply, is obviously higher than the preponderance-of-the-evidence burden of proof that will apply at trial in this civil forfeiture action.

9

following property is subject to forfeiture: "Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property." Here, the Government alleges violations of § 1956 (Laundering of monetary instruments) and/or § 1957 (Engaging in monetary transactions in property derived from specified unlawful activity).

Claimants seek dismissal of Count III on the basis that it fails to satisfy Supplemental Rule G(2). First, they contend that the Complaint fails to identify whether it was § 1956 or § 1957 that was allegedly violated. This argument misses the mark. Supplemental Rule G(2)(e) simply requires that the Complaint "identify the statute under which the forfeiture action is brought." In Count III, the Government did just that by alleging that Defendant Properties 2-4 are subject to forfeiture under § 981(a)(1)(A). Complaint ¶ 77. Notably, Claimants, who have the burden as the moving parties, have not cited any authority demonstrating that Supplemental Rule G(2)(e) requires any greater specificity concerning the applicable statute, and the plain language of the rule plainly does not dictate greater specificity.

Second, Claimants contend that Count III contains insufficient factual allegations under Supplemental Rule G(2)(f). In particular, they take issue with what they view as an absence of factual allegations to demonstrate *mens rea*. In doing so, they ignore the allegations in paragraphs 58-67, and in particular, paragraph 59, of the Complaint.

After alleging the commingling of funds involving the proceeds of specified unlawful activity (here, narcotics trafficking offenses), the Government alleges such funds were used to purchase Defendant Properties 2-4. Complaint ¶ 58. Importantly, the Government then alleges that Defendant Properties 2-4 "were titled in the name of Zamora's family members, and/or titled under various aliases, in an effort *to conceal or disguise the nature, location, source, ownership,*

*or control of the proceeds* of the narcotics trafficking and structuring offenses described above." *Id.* ¶ 59 (emphasis added).[6] These allegations, coupled with the specific factual allegations that follow, are sufficient to plead any design or *mens rea* element and to otherwise state a forfeiture claim premised upon money laundering. *See United States v. Real Prop. Located at 1407 N. Collins St., Arlington, Tex.*, 901 F.3d 268, 274-76 (5th Cir. 2018).

As to the specific factual allegations relevant to the alleged concealment, the Government alleges the dates and amounts of withdrawals (and the bank accounts used) pertaining to the separate purchases of Defendant Properties 2-4. *Id.* ¶¶ 60, 61, 63, 65, 66. In other words, the Government alleges facts concerning each of the three real property transactions involving proceeds of specified unlawful activity. Moreover, the Government specifically alleges facts related to intent to conceal/disguise the nature and source of the funds by alleging that each property was titled in the names of Zamora's family members. *Id.* ¶¶ 62, 64, 67. Notably, although Defendant Property 3 was conveyed to Zamora (and his sister), Defendant Properties 2 and 4 were allegedly conveyed to family members who were not signatories on the bank accounts at issue. *See id.* ¶¶ 49-50, 60 (alleging that Zamora, his wife, and Daughter 1 were the signatories for the 0178 Account and that the 9707 Account was in Zamora's name). Even with Defendant Property 3, which was allegedly conveyed to both Zamora and his sister, the Complaint includes the suspicious allegation that Zamora and his sister are listed on the deed as husband and wife. *Id.* ¶ 64. Thus, not only does the Complaint allege affirmative concealment efforts concerning Defendant Properties 2-4 and the funds used to purchase the properties, it supports such

---

[6] While the Government has not sufficiently alleged structuring offenses (as discussed in the next section), it has clearly alleged detailed factual allegations regarding narcotics trafficking offenses.

11

concealment allegations with sufficiently detailed facts. Therefore, the Motion should be denied as to Count III.

### D. COUNT IV

I recommend dismissal of Count IV without prejudice and with leave to amend. Count IV seeks forfeiture of Defendant Properties 2-4 pursuant to 31 U.S.C. § 5317(c). It specifically relies on § 5317(c)(2)(A), which provides as follows:

> Any property involved in a violation of section 5313, 5316, or 5324 of this title, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy, may be seized and forfeited to the United States in accordance with the procedures governing civil forfeitures in money laundering cases pursuant to section 981(a)(1)(A) of title 18, United States Code.

The alleged violation(s) pertain to § 5324 (Structuring transactions to evade reporting requirement prohibited). By way of background, the Eleventh Circuit has explained the following regarding structuring:

> Pursuant to 31 U.S.C. § 5313(a), a "domestic financial institution" is required to file a report with the Secretary of the Treasury whenever it "is involved in a transaction for the payment, receipt, or transfer of United States coins or currency . . . in an amount" greater than $10,000. *See* 31 C.F.R. § 1010.311. The "currency transaction reports" generated by financial institutions are used by law enforcement to detect criminal activity. *See United States v. Lang*, 732 F.3d 1246, 1247 (11th Cir. 2013). Because, however, the reporting obligation is borne by the financial institution and not by its customer "the reporting requirement could be evaded through the simple expedient of dividing large cash transactions into amounts small enough not to trigger it." *Id.* "To prevent that and similar end runs," *id.,* the law prohibits a person from "structuring" a transaction with a financial institution "for the purpose of evading the reporting requirements," 31 U.S.C. § 5324(a).

*United States v. Sperrazza*, 804 F.3d 1113, 1116-17 (11th Cir. 2015).

In the Motion, Claimants' primary argument is essentially that the Complaint fails to allege sufficient facts to support a reasonable belief the Government will be able to demonstrate a structuring violation at trial. I agree. The primary factual allegations related to Count IV are set forth in paragraphs 44 through 57 of the Complaint. The gist of these allegations is that over a 5.5

12

year or 66-month period, Zamora, his wife, and his daughter collectively deposited approximately $434,000 in cash into the 0178 Account (approximately $165,000 by Zamora, $71,000 by his wife, and $198,000 by his daughter). Thus, the amount of money Zamora deposited averaged $2,500 per month, the amount of money his wife deposited averaged just over $1,000 per month, and the amount of money his daughter deposited averaged $3,000 per month. However, there is no indication as to how much any (or all of them) deposited in any particular day, week, month, or even year. Other undisclosed individuals allegedly also collectively deposited over $50,000 more into the 0178 Account during this 66-month period of time. Zamora and his wife did not have any reported annual wages during this time, and the daughter had reported wages between 2010 and 2015 in the amount of $187,000.[7] The Complaint also alleges that the "vast majority" of the deposits made by Zamora, his wife, and his daughter were less than $10,000 and "appear to have been structured in this manner to avoid federal reporting requirements . . . for every transaction involving U.S. currency in excess of $10,000."

However, the Government's allegation that the deposits "appear to have been structured" is not a *factual* allegation. Nor is it a *reasonable* inference from the limited factual allegations related to Count IV. It is merely what the Government wishes to have the Court infer. While such an inference is conceivable or possible, there is presently insufficient factual matter in the Complaint to make the theory – that there is a pattern revealing an intent to evade reporting requirements – plausible. That is because the Complaint offers absolutely no facts explaining the

---

[7] In another area of their Motion, Claimants take issue with the Government's reliance on DEO records regarding reported wages. The reliability of such records, if truly an issue, is an issue for another day. At this motion-to-dismiss stage at least, the Court must accept all factual allegations as true and draw reasonable inferences from factual allegations in favor of the Government. Under such a lens, it is reasonable to infer that the DEO information alleged by the Government is accurate and reliable.

grounds for concluding that the deposits "appear to have been structured" beyond the deposits being below the $10,000 threshold.

The Government relies on various cases to support its argument that Count IV is adequately pled. *See United States v. $776,670.00 previously contained in Bank of Am. account number 000376803507 held in the name of Shin's Trading, DBA Cala Prod.*, No. CIV. 2:13-4108 WJM, 2014 WL 1669929 (D.N.J. Apr. 28, 2014); *United States v. $263,327.95*, 936 F. Supp. 2d 468 (D.N.J. 2013); *United States v. Funds in Amount of $101,999.78*, No. 08 CV 237, 2008 WL 4222248 (N.D. Ill. Sept. 11, 2008). Pointing to these cases, the Government argues that it "does not have to show how it will establish the *mens rea* elements in a structuring case to survive a motion to dismiss; the pattern of structuring is enough to meet the Rule G(2)(f) standard" [DE 35 at p. 19]. However, all of these cases included significantly more factual details than the Complaint here.

In *$776,670.00*, over a one-year period, numerous cash deposits were alleged to have been made into the account of a convicted money launderer at various branches throughout the country even though the account holder did not do business outside of the Los Angeles area. 2014 WL 1669929, at *1-3. All but one deposit were individually under $10,000. *Id.* at *2. However, numerous deposits that totaled $10,000 or more were deposited on the same or consecutive days (sometimes in the same city on the same day), including ten $9,700 deposits on two consecutive days. *Id.* at *1-3. Accepting the allegations as true, the court found that they gave "rise to the 'reasonable belief' that the deposits in the Account were knowingly structured to evade the requirement to report transactions exceeding $10,000.00." *Id.* at *3.

In *$263,327.95*, deposits totaling over $658,000 were alleged to have been made over a 12-month period. 936 F. Supp. 2d at 474. Many individual deposits were close to $10,000, but none

over. *Id.* However, the account holder frequently made multiple cash deposits that collectively exceeded $10,000 at different banks on the same day. *Id.* He also frequently made two deposits at different times at the same bank on the same day. *Id.* The Complaint attached a spreadsheet detailing 96 individual transactions. *Id.* at 470. In light of the detailed factual allegations, the court concluded that it was reasonable to infer that the account holder acted with the intent to evade reporting requirements. *Id.* at 475.

Finally, in *$101,999.78*, hundreds of cash deposits, almost always in the amount of $8,000, were alleged to have been made into three accounts over a three-year period. 2008 WL 4222248 at *2. After such deposits were made, amounts exceeding $10,000 were then transferred to two other accounts. *Id.* Also, two deposits into one account were allegedly made on various days. *Id.* Ultimately, drawing reasonable inferences in favor of the government, the court concluded that "[t]he large amount of deposits made by Claimants under $10,000, the number of accounts allegedly used, and the large total sum of money moved by the Claimants over a three-year period are sufficient, at this stage of the proceeding, to support an inference of illegal structuring." *Id.* at *3.

Unlike the cases cited by the Government in which motions to dismiss structuring claims and a motion for judgment on the pleadings were denied, an examination of the totality of the circumstances here does not plausibly reveal any "pattern of structuring" with the purpose of evading reporting requirements, particularly given the insufficient detail provided in the factual allegations related to Count IV. Again, the Complaint generally references the total amount of deposits made primarily by three individuals over a 66-month period. Yet it provides no facts regarding how many deposits were made and whether there was some pattern concerning the amounts or timing of deposits. Moreover, all of the deposits at issue were allegedly made into the

15

same account, but there is no indication regarding whether deposits were made at different branches. Nor are there any allegations about whether deposits that were individually under $10,000, but collectively over $10,000, were made on the same or consecutive days, or whether they were made in proximity to one another at all. For the Government to state a claim, it needs to provide "sufficiently detailed facts" that make its structuring claim plausible. Based on the allegations of the Complaint, it appears the Government may be able to do so with further factual allegations, but such allegations are presently absent.[8] Therefore, I recommend dismissal of Count IV without prejudice and with leave to amend.[9]

### E. STATUTE OF LIMITATIONS

Claimants' statute-of-limitations argument fails because it is not clear from the face of the Complaint that this action is time-barred as to any of the Defendant Properties or claims. The Government may or may not encounter some statute-of-limitations issues later in the litigation with respect to certain of the Defendant Properties and/or certain claims. But at this stage, dismissal is not warranted. Under the applicable statute of limitations:

---

[8] I note that Claimants cite *United States v. Lang*, 732 F.3d 1246 (11th Cir. 2013) in support of an argument that they make in the structuring section of the Motion and that the Government refutes Claimants' argument by pointing to *United States v. Sperrazza*, 804 F.3d 1113 (11th Cir. 2015). Both cases involved structuring charges in criminal indictments (and were not civil forfeiture cases). While the Government correctly posits that *Sperrazza* disposes of the argument Claimants make based upon *Lang*, it is not necessary to further discuss the issue because the Government's failure here is that it has not satisfied the pleading requirement under Supplemental Rule G(2)(f).

[9] I find that good cause exists to grant leave to amend notwithstanding the August 4, 2020 deadline to amend pleadings. Briefing on the Motion was not completed until after that deadline, and trial is not scheduled to occur until May 2021. Also, the Government specifically requested leave to amend in its Response [DE 35] should any claims be dismissed, and it has not amended its Complaint to date. Moreover, there has been no "undue delay, bad faith or dilatory motive" and no "repeated failure to cure deficiencies by amendments previously allowed," there will be no prejudice to Claimants if amendment is allowed, and I cannot say that amendment would be futile. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 (11th Cir. 2014).

> No suit or action to recover . . . forfeiture of property accruing under the customs laws shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered, or in the case of forfeiture, within 2 years after the time when the involvement of the property in the alleged offense was discovered, whichever was later; except that—
> . . .
> (2) the time of the absence from the United States of the person subject to the penalty or forfeiture, *or of any concealment* or absence *of the property*, shall not be reckoned within the 5-year period of limitation.

19 U.S.C. § 1621 (emphasis added).

"A dismissal for failure to state a claim on statute of limitations grounds is appropriate 'only if it is apparent from the face of the complaint that the claim is time-barred.'" *United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1085 (11th Cir. 2018), *aff'd*, *Cochise Consultancy, Inc. v. U.S. ex rel. Hunt*, 139 S. Ct. 1507 (2019) (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)). *See also United States v. $215,587.22 in U.S. Currency Seized from Bank Account No. 100606401387436 held in the Name of JJ Szlavik Companies, Inc. at Citizens Bank*, 306 F. Supp. 3d 213, 222 (D.D.C. 2018) ("[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred."). "Because a statute of limitations bar is an affirmative defense, a plaintiff is not required to negate the affirmative defense in her complaint." *Owens-Benniefield v. BSI Fin. Servs.*, 806 F. App'x 853, 856 (11th Cir. 2020) (citing *La Grasta*, 358 F.3d at 845).

Here, it is easy to conclude that the Government's claim against Defendant Property 1 is not clearly time-barred based on the face of the Complaint. The Government alleges that various drug trafficking offenses occurred at the property less than five years before the Complaint was filed. *See* Complaint ¶¶ 35-40. These offenses appear to be new, separate offenses from those

17

that occurred more than five years before the filing of the Complaint. As the Fourth Circuit noted in *United States v. Kivanc*, 714 F.3d 782 (4th Cir. 2013):

> When there is a continuing course of conduct with multiple, distinct underlying crimes that independently could support forfeiture of the same property, the limitations period starts afresh with each new offense. Thus, a court may adjudicate a forfeiture action as long as one underlying offense is not time-barred, even if the statute of limitations has run on the remaining offenses.

*Id.* at 790 (internal citations omitted). Therefore, I cannot conclude, based on the face of the Complaint, that this case is time-barred as to Defendant Property 1.

With respect to Defendant Properties 2-4, only Defendant Property 4 was purchased within five years of the filing of the Complaint. *See* Complaint ¶¶ 61-66. Based on the purchase date, I clearly cannot conclude, based on the face of the Complaint, that the alleged offenses related to Defendant Property 4 were discovered (let alone occurred) more than five years before this action was commenced. By contrast, the alleged offenses related to Defendant Properties 2 and 3 clearly must have occurred at or before the time the properties were purchased, and thus, more than five years before the Complaint was filed. Nevertheless, the Complaint does not state when the offenses alleged in Count III (money laundering) and Count IV (structuring) were discovered, so I cannot conclude that the alleged offenses were discovered more than five years before the commencement of this case. Moreover, I cannot conclude, based on the face of the Complaint, that the alleged involvement of Defendant Properties 2-4 in the offenses alleged in Counts II-IV was discovered more than two years before this case was filed. As noted above, in civil forfeiture cases, the statute of limitations only bars claims that do not satisfy the *later* of the five-year and two-year periods. Finally, I find it significant that the Complaint contains allegations of concealment. Complaint ¶ 59. If such concealment is proven, the five-year limitations period

under § 1621 may have been tolled for some period of time (at least with respect to the properties that were not titled in Zamora's name).  *See* § 1621(2).

For the foregoing reasons, while Claimants may be able to raise the statute of limitations as an affirmative defense, the face of the Complaint does not clearly show that the claims in this case are time-barred.  Therefore, Claimants' statute-of-limitations argument does not justify dismissal of any counts of the Complaint at this stage.

### F. REMAINING ARGUMENTS

Claimants argue that the Complaint is barred by the doctrine of laches to the extent it is not barred by the statute of limitations.  However, their laches argument is premised upon alleged facts that are nowhere in the Complaint.  Therefore, as with their statute-of-limitations argument, their laches argument must fail at the motion-to-dismiss stage.  *See United States v. Borgono*, No. 18-21835-CIV, 2019 WL 1755709, at *4 (S.D. Fla. Apr. 19, 2019) ("[A] laches analysis requires a fact-intensive inquiry which the Court finds inappropriate to consider at the motion-to-dismiss stage of this litigation. 'Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations or laches.' That is, "[a] court may only dismiss a claim as untimely under Rule 12(b)(6) if it is clear from the face of the complaint that it is hopelessly time-barred.'" (internal citations omitted)).

Likewise, Claimants' estoppel and due process arguments are based upon alleged facts – indeed, disputed facts – that are not contained anywhere in the Complaint or the exhibit thereto.  Therefore, it is inappropriate for Claimants to have raised these arguments in a motion to dismiss.  Moreover, Claimants once again failed to point the Court to any case law or other legal authority

to support their estoppel and due process arguments. Accordingly, the Motion should be denied with respect to Claimants' laches, estoppel, and due process arguments.

## CONCLUSION

For the reasons discussed above, I **recommend** that the Motion [DE 12] be **GRANTED IN PART and DENIED IN PART**, that Count IV be dismissed without prejudice and with leave to amend, and that the Motion otherwise be denied.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 22nd day of October 2020.

Jared M. Strauss
United States Magistrate Judge